which is 21-1160 Green v. Quiros. Mr. Unger, nice to see you again. It's been too long. May it please the court. And you again have three minutes for rebuttal. Thank you. In Mr. Green's case, your honor, may it please the court, Randall Unger for Courtney Green. Our position is that habeas was and is the proper avenue for pursuing the relief sought, release from custody. Mr. Unger, before we go far down the path of that important question, I just had a short question. I noted on the district court docket that there was a local Rule 41B order entered saying that a settlement conference had been held before Magistrate Judge Batty. The action has been settled in full as part of a global resolution of plaintiffs pending federal matters and directing the clerk to administratively close the file immediately on the district court docket. Does that bear at all on our appeal or these federal claims? I don't think Mr. Green was subject to that global settlement. But he's the only party involved. This was Green v. Quiros. May I just ask what was the date of that entry? April 4th, 2022. I saw my adversary shaking his head. I'm going to have to defer that to- So you're not aware? No, I was not, actually. Of any settlement, okay. I would have to look at that further. Mr. Strom, I'll explain that. Yeah. I think, is it in the, no, okay. It may have carved out the habeas, but I think we need to have the, it's docket number 13, which we don't have in the appendix. But my understanding at least was that it carved out the habeas from the global settlement. Okay. I'm, again, not aware of that. I'll leave it to my adversary to address that point. It makes sense that that would be so, but this is- I seem to be- You don't understand this claim to have been settled as part of that global settlement. That's correct. I seem to be running into some serious mootness problems on both of my matters today. But if I may just proceed with what I was going to say. I think that the court's original certified question, whether these types of claims should be brought through habeas or 1983, I think the simple answer is habeas is the appropriate avenue. I would say that because it's a simple rule for this court to dictate to the district courts, and simpler for the district judges to apply. Once the petition is filed, it doesn't require that the district judge look through or into the merits of the case at the pleading stage. Simply let the case go forward. And after all, I think habeas is the appropriate avenue, because what Mr. Green was seeking was his release from custody. Yes, but what he was complaining about was the conditions of compliance. That's true. And wouldn't that be a 1983 question rather than a habeas question? Well, it would be if he were not seeking his release from custody. If he were just seeking to correct the conditions that he was subjected to, and if there was some way for the state- But his release from custody is based on his conditions of confinement. That's- If you were to correct, or somebody was to correct the conditions of confinement, there'd be no case anymore. But I think what Mr. Green is arguing is that the state has already demonstrated that it is not capable of ameliorating those dangerous conditions that he's subject to. They've demonstrated that either through their failed attempts to deal with it or just their incapacity, inability to correct those conditions. Do we need to take account of the changed circumstances between when the petition was filed and the readily available vaccines now and boosters and management and so on? Wouldn't it be maybe appropriate to understand his complaint to seek something? If he were filing it today, he might not be seeking release. He might be seeking more changes to conditions of confinement rather than immediate release. Well, I suspect Mr. Green would still be seeking his release from custody as any normal inmate. But in terms of what is substantiable. Well, certainly, of course, conditions have changed dramatically from the time the petition was filed till the present day. We have a vaccine or vaccines. There are some recognized means of treatment of the COVID virus that were completely unknown at the time of the petition filing. But nevertheless, the institutions that detain our inmates are not necessarily, they're not going to be complying with the CDC regulations. So then what he's really seeking is compliance with CDC regulations. Well, I think in an ideal world, yes, that would be appropriate. And that would be a 1983 claim, wouldn't it? Well, but that would be if there was some means by which the state could correct those conditions. And Mr. Green is arguing there is no way. We've seen what happens. For example, yes, there's a vaccine, but- Under that kind of reasoning, shouldn't every prison in the United States simply be shut down because you can't have it under current circumstances? You can't keep your prisoners safe? Well, I think the safety of inmates is a serious problem. Without a doubt, but to what extent and on what basis? Well, I'm not here to suggest that the court redesign the entire United States correctional system. It's not something that's feasible. But there certainly can be changes made. I mean, the scientists who reviewed the virus said social distancing is the number one way to combat the virus. In the prison system, there is no social distancing. People are crowded together in extremely unsanitary conditions. Mr. Green is saying, look, I can't survive in this environment. I have medical conditions that leave me vulnerable to the virus in particular. And because of the way- Well, for one thing, the prison doesn't require that the correctional officers who run the system, that they be vaccinated. It certainly doesn't mandate- It's conditions of confinement. Yes. Can I ask, is there any conditions of confinement claim that would have to be brought via 1983? If there were conditions, yes, that could be remedied. Just give me an example, if you would. Well, I mean, if an inmate isn't receiving, I think there was one case where the claim was improper psychiatric attention. Right. And this court said what that's really about is requiring, that's fielding, requiring the prison to provide necessary treatment, though it had been passed by the petitioner as a relief-seeking relief. Right, right. But, I mean, a situation like that, or if an inmate claimed that the food he was being served wasn't in compliance with either his religious or ethical beliefs- Right, so let's say he makes that claim and he says, but the prison won't ever change its ways on this. And so the only way to cure the constitutional violation is release. Yes. You're saying that food-based challenge could be brought via habeas? No. I would say, not that that's a trivial concern. A person's religious and ethical beliefs are important. But the coronavirus created a life-threatening situation. It's, in my opinion, a different category from many of the- The everlasting life is more important than this one. And I respect that opinion. But we're talking about a virus that killed, so far has killed, over a million Americans. I forget what the number is worldwide. How about a medical treatment claim by an individual who says, I need certain medical treatment. The prison won't ever give it to me, and so what I'm seeking is release. That's life and death for that individual. You say that has to be brought, that's to be brought via habeas and not 1983? I would say if the inmate were able to support that argument with medical evidence- So all of those claims then proceed as habeas and then go into some sort of evidentiary hearing in which you're deposing the prison staff and all of that's being supervised by the federal courts over how the states run their prisons. Well, I know it would be burdensome, but I think where the inmate's life is in jeopardy, I think it merits that kind of attention. So really, under that theory, unless there's some argument you can make for drawing a dividing line, any conditions of confinement claim, so long as it's pled as requiring release and that the prisons can't otherwise meet the needs of the prisoners, it proceeds as a habeas and the federal courts supervising the state penal system. I would argue yes. As burdensome as the court has laid it out, I think that the claim is the claim. And if the inmate is saying there is no condition, no possibility of the state ever correcting this condition and it puts my life, my very life in jeopardy, I think that it is a habeas petition and- Injunctive relief is available in 1983. Pardon? Do you believe a prisoner could not obtain release through the injunctive relief process in 1983? As I understand it, it's somewhat difficult. There's essentially an obstacle course laid out before the inmate in- Well, of course, habeas has exhaustion requirements and it's an obstacle course, doesn't it? Yeah, and frankly, I'm not even aware of the exact process by which a 1983 claimant could actually obtain release from custody. I don't think it's a very common occurrence. So I think that traditionally, habeas corpus is the remedy, and it is the avenue by which an inmate seeks release from custody. And regardless of the basis of the claim, whether it's a challenge to the conviction or whether it's based upon the conditions of confinement, I would still submit to this court, it is the appropriate remedy. So you're saying only one thing matters, is what is the remedy requested? I think that- As to- Yes, I would say that is the paramount concern. It should be. And it should be the determining factor as far as whether or not this is a properly filed petition. And I would submit in Mr. Green's case, he filed what was the properly, it was a habeas petition, albeit not the- And in terms of, I guess our certificate of appealability didn't go this far, but your client has some serious state exhaustion- True. Hurdles to deal with. True. Were he to proceed- Right. And for all of Mr. Green's so-called litigious nature, for some reason he didn't file in the state court on the basis of his current claim, which he made in the federal court based upon the COVID pandemic. He seemed to have no difficulty filing various other petitions over the years, but he did not exhaust the claim. He would have to do that before he got relief. Well, if we're going to consider his petition properly converted, as the district court did to a 2254- You still have to exhaust under 2241, don't you? Well, but I would submit that since that's a judicially created principle, whereas 2254 is, by its own terms, requires exhaustion, I would submit that the requirement would be or should be excused in this situation. At this point, it wouldn't make much sense for Mr. Green to return to the state court and start litigation from scratch. Well, but there's time now. There's less urgency. I mean, I looked at Judge Arderton's decision that purported to excuse prisoners right in May 2020 from exhaustion requirements given the urgency of the situation and the unavailability of state courts. But the circumstances, again, have changed dramatically. Well, of course. Again, when the petition was filed in the court below, admittedly, conditions were very different and much more dire than they are today. But- Can I ask, since I know that you like moodiness as a topic, if we were now in a situation in which COVID were essentially eradicated like smallpox, and that had happened since the filing of this complaint, this petition, would your client's claims here be moot? Well, it would depend, I'd say, on whether the institution where he's incarcerated are going to be requiring that everybody who passes into the facility be vaccinated, for example. Oh, that will have us in the Supreme Court. But you're fighting my hypo is that it's gone. It's not an issue. If it were completely eradicated through vaccinations or it magically just sort of disappeared, I would be very hard-pressed to make the argument that Mr. Green should be released under that scenario. But, of course, that's a hypothetical which we're not dealing with. So under the actual- But what we are dealing with is a very changed set of circumstances. No question about it. So I guess I'm asking about that to see what, if it's true that we could posit a world in which there's no pandemic, then, and the case for this petitioner and, frankly, all would be moot. What does that mean we do in a situation in which, I think here, Connecticut calls it stale, given vaccines and treatments and the like? What do we do with that either in terms of mootness or merits? I don't know. I really can't answer that because every case is going to pose different questions like that. Certainly in a fast-moving pandemic situation, the way matters were being dealt with at the beginning, where there was very little understanding about what the virus even was. It's very difficult for me to provide an intelligent answer to that because given the change of circumstances in terms of a vaccination being developed, treatments being worked on, I'm sorry, Your Honor, I just don't have a good answer for that. But thank you. Thank you. And you do have three minutes for a rebuttal. Mr. Strom, you agree with your adversary? In every respect. May I have a moment, Your Honor? You may. I apologize. Take your time. Thank you, Your Honor. May it please the Court, good morning, Your Honor. I'm Stephen Strom, Assistant Attorney General for the respondent, Angel Quiroz, the Commissioner of the Connecticut Department of Correction. With regard to Your Honor's question about whether I agree with Mr. Unger on the merits about whether or not this petition was properly treated by the District Court in Judge Haight's decision as a 2254 habeas petition, yes, I agree with that. Mr. Green? I meant you agree that this should be brought as habeas and not 1983. No, I'd say it could be brought as both. And that's what the United States Supreme Court in Pricer said 50 years ago. And for 50 years, District Courts have been routinely screening petitions, whether the label is 1983, whether it's habeas under 2241, whether it's habeas under 2254, whether it says last will and testament. If the prayer for relief is release me, the district judges uniformly for 50 years. So you think Congress, in light of Pricer, couldn't do what they did in 1983, which was as narrow as it is, create an avenue for release? But also, Your Honor, Congress clearly did that, and we know from the Brown v. Plata case, you know, that it took 12 years with special masters and receiverships. Congress made it really, really hard, but you're saying the proper way to read Pricer is that Congress couldn't do that. No, I'm not saying that. I'm just saying that at the same time in 1996 when AEDPA came in and Congress had an opportunity to amend the habeas statute, 2254 habeas statute, Congress did not narrow it to just merely a tax on the conviction or the sentence. Congress left it as broad as it is, said any prisoner. You don't think we should look at what Congress did simultaneously with the PLRA and with AEDPA to try to understand what scheme Congress was imagining to make available when the remedy sought of state prisoners for conditions of confinement claims is release? That overall statutory structure doesn't tell us anything. It does, Your Honor. And I think what Congress was concerned about in the Prison Litigation Reform Act of 1995 that became enacted in 1996 was ongoing consent decrees and institutional reform consent judgments because there were many other provisions under 3626 to immediately move to terminate those old consent decrees. I've been involved in them for 36 years. Do you think that will flow as a result of allowing any conditions of confinement claim for which the relief sought is release? No, Your Honor, because when you read 3626 the only way you can get a release order under 1983 is if the cause of the constitutional violation is prison overcrowding. It's not the religious diet case. It's not COVID. It's not. There has to be. I thought it being social distancing was the sort of core of this claim, isn't it? Prison overcrowding. No, it's not, Your Honor. Quite frankly, you know, the district court was aware that Mr. Green had a 1983 action and in response to Judge Carney's question, you know, I did think in our brief we cited to it at page 7 in our footnote, I don't think our office was actually aware of this habeas at the time. So it wasn't expressly carved out, but in the brief I represented, as Judge Nathan pointed out, that it was carved out because typically our office does not settle habeas cases. Because habeas involves fundamental liberty, we'll compromise and bargain and settle money damage claims, and that's what Mr. Green did. He had about four or five 1983 actions in the district court. One of our colleagues got elevated to the state superior court as a superior court judge. They were taken over by my colleague, Assistant Attorney General Terrence O'Neill, and he went to see Judge Vahdie and sort of to get rid of a bunch of Mr. Green's cases. So when Mr. O'Neill was meeting with Judge Vahdie, I don't think he was aware of this 2241, what was then a 2241 or 2254 petition. It would have to go back to the district court, and then we would have to, you know, file the release and argue release and satisfaction, raise judicata and a bunch of- Thank you for the explanation. I was, the docket entry was so sweeping. It is, and it is, Your Honor, and quite frankly, the release that Mr. Green signed is so sweeping that it would encompass this case. But we had done the briefing. We realized that district courts in the Second Circuit are at odds with one another. We realized, you know, initially we filed a no thank you letter with this court and said we're not even going to appear because it wasn't served. And then we appeared in Zemeckis, and then we intervened because we realized that this is an ongoing issue. And quite frankly, you know, Judge Sack, you were on the panel in New York State v. Division of Parole. That answers to the- You say so, yeah. In 2002. So 20, 21 years ago in that case, we had, well, 20 years ago, I think it was 2003, we had James v. Walsh where this court actually asked for briefing on this exact same question, which is can state prisoners challenge the execution of their sentence under 2254? And this court said yes, the plain text of the language of 2254 is broad enough to allow such challenges. And in fact, the plain language, I commend to this court a law review article from the Harvard Law Review, Volume 135, colon 1397. It came out in March 10 of 2022 called The Textual Argument for Challenging Conditions of Confinement Under Habeas. I mean, this is the kind of case that has the potential, as Judge Sack mentioned, to go to the Supreme Court because it's going to affect hundreds if not thousands of prisoner cases all across the country. You know, most district judges refer a lot of the prisoner cases to the magistrate judges. And whether or not it's in 1983 or 2254 has some significant practical experience. Judge Nathan, you mentioned about your concern about federal judges micromanaging state prisons and getting involved in the day-to-day operations under habeas. But to take the position that the sole remedy is 1983, that is even more sort of infringing on state comedy and federalism because if it's 1983, they're all going to go to the district court. If this court interprets because 1983s are filed in the first instance in the district court. Yeah, but you still have to administratively exhaust. So it seems like, I don't, I mean. Administrative exhaustion is nothing like state court habeas trial. In a state court habeas trial, you get counsel appointed, at least in Connecticut, you may get counsel appointed. You have subpoena power. You have full cross-examination. You have full records. If you look in our appendix, the Hurdle case and the Little case, there were Yale epidemiologists who testified. So as Judge Haight pointed out, you know, exhaustion really promotes comedy and respect for the state court, which is so critically important in these prison cases. The state, especially the state courts, are much more familiar with the operation of the prisons. Sorry, we're getting so far away from where I thought we were. I guess my question is, and therefore what? I mean, what, does that tell us then that this is a 2254 case and not a habeas case? I don't know if you're- It is, and to comment briefly on the order from February 9th, this is a 2254 case because it's well established that a plaintiff is the master of his complaint. He brought it as a 2254. He failed to exhaust- Let me rephrase it then. Any relief he would get would be under, if any, would be under 2254. Under 2254. Not 1983? Correct. But under 2254- If they correct at least a little slower, I mean, that's what the question is for. Yes, 22- And that's Connecticut's position. That if the relief sought is release, it should be brought as a habeas and exhausted through state habeas procedures and not brought as a 1983. But it's not just Connecticut's position. It's the position- But that is Connecticut's position. It is Connecticut's position. Not New York's position, for example. No, it's not my own personal position, but it's the state's position, the respondent's position. But that's also the position this court took, for example, in Abdul Hakim. When the prisoner wanted to get out of Rikers, they said he's not seeking complete release, so he has to bring it as a 1983. In Muhammad v. Close, in the Supreme Court case, they said there's two avenues of prisoner litigation, 1983, 2254. But they don't say they're mutually exclusive. And in Muhammad v. Close, the prisoner wasn't seeking release, so 1983 was the remedy. So that's the way the courts have interpreted these cases. If the prisoner is not seeking release, the method of execution cases, for example, Nelson v. Campbell and all those cases, if the prisoner wasn't seeking to challenge the underlying sentence or challenge the conviction, wasn't seeking release, then the remedy was 1983. Mr. Green compromised- But, Jim, just to go back a little, I'm not sure I took in your answer. I get that it's very narrow and very difficult, and Brown v. Plata tells us that. But you can seek release via 1983, correct? You can, yes, Your Honor. So your theory is you can choose, either 1983 or 2254? Just like any other litigant. He could choose to bring a tort action in the state claims commissioner, like a- If the prisoner were to prevail in Connecticut, so exhausted, and then comes to federal court, pursuant to 2254, and gets an order of release, could a federal court order state parole supervision? I think it could order whatever conditions it would, under, for example, cases like Ziegler v. Abbasi, the Supreme Court case. Whatever, you know, 2243 says whatever law and justice requires. So the remedy in habeas is not necessarily release. It could be other remedies. And we know from the more recent United States Supreme Court cases that habeas, modern-day habeas, is not limited to, you know, to the warden, bring the prisoner, are you Steve Strom? Yes, I am. You go back to jail. There are more creative ways that habeas court can order remedies consistent with the constitutional violation and consistent with public safety. So I think, yes, a habeas court could fashion habeas relief. However it sees fit, because it's like an equitable remedy as law and justice required. That's what 2243 says, that the habeas court. Now, it would at least have a record from the state court. The district court wouldn't, but what the, to go directly, as Mr. Green tried to do, to federal court. Because one of his prayers for relief is give me a trial and hold an evidentiary hearing. District courts shouldn't be burdened with that. State courts are- This is a little bit out of order, but with our presider's permission. Are you familiar with New York's brief? I am, Your Honor. Yes, I've read them. Which takes a very different position- Correct, Your Honor. And says that it's, to the extent we're not talking specifically about statutory language, but basically that comedy concerns are better honored in a different context from what you're proposing. Because of filing fees and the three strikes rule and the constraints that the PLR imposes. Shouldn't we take account of those arguments? I would, but I think it flies in the face of the plain text of 2254. It flies in the face of longstanding cases from this court. James v. Walsh, New York State v. Division of Parole. I think it's contrary to Pricer. And most importantly, principles of federalism where state courts are in the best position to bring a prisoner quickly into court and make a state court record. That comedy and federalism and deference towards state court findings is much more respectful of state courts than just administrative grievance exhaustion within the prison. And ultimately your position is that really it depends what the pro se prisoner wrote at the top of his submission to the court? Not what he wrote at the top, Your Honor. Or at the bottom. At the prayer for release. But if he says release. Yeah. I thought we were just saying that a release is available under 1983 as well as under 2254. It is only available in cases where the sole cause. And I think when you read the context of all the debates on the PLRA, it was in the context of institutional reform, litigation, class actions. But where the cause of the remedy is overcrowding and only where less intrusive, more narrowly tailored remedies have been tried and failed. So the only case that went to the Supreme Court on that issue, 3626, was where California had a history of, I think the case started in 1990 and it got to the Supreme Court 20 years later. There was a record, how long does somebody have to wait for a less intrusive injunctive remedy? So 12 years of special master receivership. Finally, the California courts convened, the district court convened a three-judge panel, combined Coleman with Brown v. Plata, and determined, and there was a 132-page district court decision that went up to the Supreme Court. Mr. Green, in this case, he would have to wait well beyond the term of his 20-year sentence before that 1983 relief ever became realistic. Go ahead. So this is a condition of confinement case that properly brought under 2254, is that correct? Yes, yes, your honor. If you stop there, I understand. I will stop. I apologize for going on and on. And I have another question for you. Practically speaking, so conditions of confinement claim that prayer for relief says release. So then what happens after exhaustion in federal court? You get a hearing at that point? Is there an assessment for the plausibility of relief, release being an appropriate remedy? Or just any time, so take your most sort of caricature conditions of confinement claim. I'm not getting the nail clipper that I prefer, and it's an Eighth Amendment violation, and I need to be released. So what happens to that claim in federal court? In federal court? Well, first it would have to have been exhausted in state court, right? So if the petition were denied in the state superior court, in Connecticut we call it superior court, the trial court. It goes to the appellate or supreme court of Connecticut. So if it was a habeas petition, just like Mr. Green's, because we have in the record Gonzales, and it went to the supreme court, it was denied, we would argue that when it went to the district court and he initiated the 2254, if it was properly exhausted, the district court would have a record, and then under 2254 and the deferential standard, the only deferential standard is, did the state court act contrary to federal law or clearly apply unreasonably? It's a very deferential standard. If the petitioner prevailed, and let's say the state court ordered release, and it went to the Connecticut supreme court and they affirmed release, and we wanted to appeal further, that's a real question. I don't think that's ever come up. But the nail clipper situation, I think that would have been screened under either 1915A, the district court screening of if it came in as a 1983 case, or if it came in as a habeas case like this one, it would have been screened under the habeas rules, and rule four of the 2254 petitions, it would have been dismissed. And what does your approach mean for Fielding, which sought release? Your Honor, Fielding was actually a 2254 petition challenging the underlying sentence as being unduly harsh and vindictive. The throwaway line that the court put in there, if he really wants psychiatric care, he can get 1983, that's really dicta and a truism. That's true on any day of the month for any state prisoner. Any day of the month of a state prisoner who wants psychiatric care and he claims he's being subjected to cruel and unusual punishment because he's not getting it. So it was not necessary to the decision in Fielding. In fact, the Fielding decision affirmed the 2254 denial of the habeas and denied the habeas. So that line about, well, I think we argued in our brief and explained, that would put the district judge, every time a complaint comes in, and it says at the very bottom, release me, the judge would have to go through every possible less intrusive, narrowly tailored remedy and say, well, for the nail clipper, we don't have to release him, we can give him a nail clipper. Or for this one, we don't have to have social distancing, we could put Mr. Green in a single cell and we could order to the commissioner to require every correction officer to wear a mask at all times. And the commissioner could be, the court would be in effect becoming an advocate for the prisoner, amending the complaint. That's not what Fielding really, I don't think that's a manageable rule that. But it's confusing to me because the, I mean, I think one read of Fielding is to say what's sort of really going on here. Is this really about conditions of confinement and at base, you know, what's being sought as a change to those conditions, regardless of how it's been characterized. But what you're saying is district court shouldn't have to do that, instead the district court should just sort of go forward and adjudicate that claim, right? In Fielding, in Fielding, the district court, no I'm saying in Fielding, if in fact he had a 2254 petition that raised as a, you know, grounds for release, I am not getting psychiatric care, which I don't know, reading this court's opinion, I couldn't determine that. The court could have, and this court had a rule that conditions of confinement can be litigated in a habeas. The proper remedy would be to remand it back to the district court with instructions to remand it to the state court, so that that claim could be exhausted in state court. But if it is exhausted in state court, and then it's brought here as a 2254, seeking release for the failure to provide psychiatric treatment, the district court has to evaluate it, go forward, maybe hold a hearing on the necessity of, you know, a battle of the experts on whether you really need the psychiatric treatment and what kind of psychiatric treatment is appropriate and all of that. Right, but the court wouldn't have to necessarily order release. The court could remedy, if the court found a constitutional violation is not providing the psychiatric care, the court could order narrowly tailored relief. I'm going to order the respondent to provide the psychiatric care that is needed. And then that makes the confinement no longer- So it's more like a 1983 claim. Exactly. But without the statutory restrictions of 1983. Well, there are still equitable restrictions based on the Supreme Court's jurisprudence that courts should not be entering wildly intrusive, you know, injunctive remedies that would essentially make the court a super commissioner of correction. And there would have been complete state court proceedings in any event prior to- It could always be remanded back to the state. There would be a full state court record, yes, Your Honor. Thank you, Your Honor. I'm sorry for going so long-winded, but I appreciate the time. Thank you, Your Honor. Thank you. Based on Mr. Strom's argument, I'm going to respectfully waive my rebuttal time. You're afraid I'm going to ask you something else about movements? Let somebody else do the talking. Fair enough. Thank you. Thank you to you both.